## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**BELINDA WILLIAMS,**                   :
                                        :
    Plaintiff,                   :        Civil Action No.:
                                        :
        v.                       :
                                        :        JURY TRIAL DEMANDED
**NEW CASTLE COUNTY**                   :
**VOCATIONAL TECHNICAL**                :
**SCHOOL DISTRICT,**                    :
                                        :
    Defendant.                   :

## COMPLAINT

## PARTIES

1.     Plaintiff Belinda Williams (hereinafter "Plaintiff"), has at all times relevant to this Complaint been a resident of New Castle County, State of Delaware.

2.     Defendant, New Castle County Vocational Technical School District (hereinafter "Defendant"), is the employer of Plaintiff Belinda Williams and is and was at all times relevant to this Complaint, a Delaware public school district operating under the laws of and within the State of Delaware.  Defendant is subject to service of process through New Castle County Vocational Technical School District; c/o Dr. Steven H. Godowsky, Superintendent, 1417 Newport Road, Wilmington, Delaware 19804.

## JURISDICTION

3.     Jurisdiction is founded on the existence of a question arising under federal statutes.  This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 704(a) of Title VII of the Civil Rights Act. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights

secured by federal and state law which prohibits discrimination against employees because of their gender and on the basis of retaliation.

## FACTUAL BACKGROUND

4.      On or about September 16, 2002, Plaintiff was hired as an instructional aide for the aviation shop at Delcastle Technical High School.

5.      In the beginning of her employment, Plaintiff was advised that she would teach the 10th grade students and John Serwinski (hereinafter "Serwinski") would teach the 11th and 12th grade students. Plaintiff was also told that since Serwinski did not have any teaching experience, they wanted Plaintiff to teach him how to be a teacher.

6.      On or about October 2, 2002, Serwinski told Plaintiff that she was not his selection to be hired and that he was going to find a way to get Plaintiff "out of here." During this same conversation with Plaintiff, Serwinski stated that he did not "get along with women" and that "the only one I don't have problems with is the girl I work with at the Guard."

7.      Thereafter, Plaintiff thought about Serwinski's comments and then called Eric Wells (hereinafter "Wells"), Assistant Principal and Career Advancement Supervisor. Plaintiff notified him of Serwinski's comments and also asked Wells who her manager was. Wells told Plaintiff that she worked for Wells and that Wells was the only person who could move Plaintiff out of the aviation shop.

8.    In or around February 2003, Serwinski informed Plaintiff that he was being called to active duty for the Delaware National Guard and that he would be leaving in March of 2003. As a result, Plaintiff was asked to perform the duties of instructor in Serwinski's absence.

9.    Also in or around February 2003, Serwinski was being investigated by the State Police as a result of a physical confrontation he had with a student at Del Castle.

10.    In or around August 2003, Larry Monaghan (hereinafter "Monaghan"), Del Castle's Principal, advised Plaintiff that Serwinski was not going to be returning and asked Plaintiff to remain as the instructor for the shop. When the 2003-2004 school year began, Plaintiff served as the instructor for the aviation department.

11.    As instructor, Plaintiff was responsible for teaching the students, attending meetings, and completing paperwork, including but not limited to budget paperwork. Plaintiff also prepared the shop area curriculum and lesson plans.

12.    In or around November 2003, Serwinski returned from active duty and assisted with Del Castle's senior class in the mornings. However, at the end of November 2003, Serwinski returned to active duty deployment with the Delaware National Guard

13.    In or around early March 2004, Serwinski returned to the aviation shop. He reminded Plaintiff that he was the instructor and that it was his shop. It was during this time that Serwinski's attitude and comments toward Plaintiff became increasingly offensive. Serwinski

yelled to Plaintiff, "Why are you here?", "What do you want?", and "Don't you have something else to do?" Serwinski would ask Plaintiff to do trivial tasks outside of the shop just to keep her from being in the shop.

14.    Serwinski did not want Plaintiff to talk to the students and if she did, he would immediately inquire as to the topic of their conversation.

15.    Additionally, Serwinski placed the classroom's telephone in his pocket so that Plaintiff would have to ask him to use the phone. Serwinski also kept the keys to the cabinets and Plaintiff had to ask him for them also.

16.    Serwinski belittled Plaintiff in front of the students by constantly reminding the students that she was "just the aide" and that he was the instructor. Serwinski told Plaintiff that he did not want her talking to students about school or personal matters because he was the instructor and if the students want to know anything the students were to ask Serwinski directly.

17.    On or about March 10, 2004, Plaintiff talked to Wells about Serwinski's conduct. Plaintiff told Wells that Serwinski wanted to be the only teacher in the shop. In response, Wells instructed Plaintiff to make a list of her concerns and to address her concerns with Serwinski. Wells further instructed Plaintiff to show Wells the list of concerns and focus on one or two concerns at a time.

18.    On or about March 12, 2004, Plaintiff talked to Karla Rowe (hereinafter "Rowe"), an electronics instructor and mentor to Plaintiff, about Serwinski's conduct. Rowe advised Plaintiff to talk to Wells.

19.    In or about April 2004, Serwinski told Plaintiff that the only reason she was hired was because she was a woman. He also told Plaintiff that she was not qualified and that she was not wanted there.

20.    On or about May 3, 2004, Serwinski began throwing chairs around the classroom because the students were not listening to him.

21.    Sometime thereafter, Plaintiff requested the keys to the soda machine from Serwinski. Serwinski responded, "God damn it. Can't I keep my own freakin' keys? Does she have to have everything?" Serwinski then threw the keys at Plaintiff and nearly missed hitting Plaintiff.

22.    Plaintiff called Wells on the phone to advise him about Serwinski's conduct involving both the keys and the chairs. Plaintiff indicated to Wells that she had concerns about her safety and the safety of the students. Wells told Plaintiff that he would talk to Serwinski and then get back to Plaintiff. However, Wells never talked to Plaintiff about the incidents ever again.

23.    On or about May 24, 2004, Plaintiff spoke with Rowe again about Serwinski's conduct.

24.     In or around June 2004, a meeting was held with Wells, Serwinski and Plaintiff. During the meeting, Serwinski stated that Plaintiff was "an emotional female," "difficult to deal with" and that "something needed to be done." Wells stated that he wanted Serwinski and Plaintiff to work out their issues before school started in the fall.

25.     Plaintiff scheduled a meeting with Serwinski as instructed by Wells. However, Serwinski failed to attend this meeting. But, by August 2004, Serwinski and Plaintiff had discussed the events of the previous school year and started the new 2004-2005 school year with a few changes in the teaching curriculum. Serwinski decided that he would teach the 11th and 10th graders and she would teach the seniors.

26.     In or around September 13, 2004, Wells contacted Plaintiff and advised that she was no longer supposed to do Serwinski's job as the instructor of the shop. It was Wells' understanding that Plaintiff had been doing many of Serwinski's responsibilities even though she was the aide. Wells told Plaintiff that Serwinski needs to do the job that he is getting paid to do.

27.     Shortly thereafter, Serwinski offered to pay Plaintiff out of his own pocket if she would agree to do some of his job duties.

28.     In or around September 23, 2004, Serwinski told Plaintiff that he had previously talked to Wells about not hiring Plaintiff because she was not Serwinski's choice for the instructor's aide position. Serwinski stated that he planned to talk with Wells about having Plaintiff removed from

the shop. He then told Plaintiff that one of them would not be working there at the end of the school year and that either he would leave or Plaintiff would leave.

29.     Later that day, Plaintiff contacted Wells to have a meeting. During the meeting, Serwinski stated that he did not want Plaintiff in the shop and that he had previously told Wells not to hire Plaintiff because Serwinski knew that there would be problems. Wells gave Serwinski and Plaintiff a description of their respective job duties.

30.     On or about September 29, 2004, Plaintiff again talked to Rowe about Serwinski's behavior towards her. Rowe suggested that Plaintiff contact Ms. Nancy Hueber, the school union representative.

31.     During the open house in November 2004, Plaintiff had to suffer through Serwinski talking under his breath about what he did not like about Plaintiff and how "perfect" she thinks that she is.

32.     On or about November 29, 2004, Plaintiff asked Serwinski for lesson plans and his response to Plaintiff was "Let's not be stupid."

33.     On or about December 7, 2004, Plaintiff returned from Secondary Remedial Reading (hereinafter "SRR") classes with the students only to be berated and screamed at by Serwinski in front of the students because he forgot about her SSR activity.

34.    On or about December 8, 2004, both Plaintiff and Serwinski were in the aviation shop with the junior class. One student entered the classroom late while putting his uniform on. Serwinski angrily stated, "Hurry up and get your bra and panties on!" Serwinski also stated, "Have you got your nail polish on yet?"

35.    During this same class, Serwinski continued a discussion with the students about Viagra. Serwinski stated that the customer needs to decide which three (3) days he wants his girlfriend to come over for some fun, or better yet, buy a blow up doll because they don't talk back.

36.    In or around December of 2004, Serwinski berated Plaintiff with several threatening phone messages that he left on the school answering machine in the aviation shop. Serwinski threatened to call Plaintiff at home where her children resided.

37.    Plaintiff contacted Monaghan to advise him of Serwinski's conduct. However, he was not available.

38.    The next day, Serwinski continued to degrade Plaintiff in front of the students. Plaintiff asked Serwinski to talk to her in a professional manner but Serwinski refused. Serwinski threatened to treat Plaintiff any way that he wanted. He then asked Plaintiff what Wells or anyone else was going to do about it. He responded, "Fire me, so what?" He then asked Plaintiff who the school needed most, Plaintiff or Serwinski.

39.     Plaintiff sent an email to Wells concerning Serwinski's conduct asking Wells to help her with the situation. Plaintiff explained in the email that she had done what Wells requested and that she needed his help on how to handle Serwinski.

40.     On or about December 10, 2004, Plaintiff contacted and left a message for Monaghan concerning Serwinski's harassment. Also, Plaintiff contacted and left a message for Leroy DeShazor, Personnel Director, concerning Serwinski's harassment.

41.     Thereafter, Plaintiff spoke with Monaghan concerning Serwinski's conduct.

42.     On or about December 13, 2004, Plaintiff spoke with Wells about Serwinski's conduct. Wells advised that he would talk with Monaghan and get back to her. Sometime thereafter, Monaghan contacted Plaintiff and advised that Wells would handle the situation because Wells was Plaintiff's supervisor. Plaintiff called and left a message for DeShazor advising that she wanted to stop by his office to talk with him about Serwinski's conduct.

43.     On or about December 15, 2004, Plaintiff met with Wells in his office. Plaintiff discussed all of the aforementioned events involving Serwinski. Wells provided Plaintiff with a copy of the Defendant's policy on harassment and asked Plaintiff to read it and get back to him.

44.     By late January 2005, Serwinski had become increasingly possessive of Plaintiff to the point where she was not able to leave the shop without his permission.

45.    On or about January 28, 2005, Plaintiff heard students laughing in the shop and went over to them. Plaintiff noticed that a student, hereinafter "A.P.", had placed a roll of paper towels in his shirt to obtain the appearance of having large breasts. Another student, hereinafter "M.V." was tightening a belt around his waist to increase the size of the breast while the class laughed. Thereafter, in front of the sophomore class, Serwinski said that A.P. "looked well proportioned."

46.    Thereafter, Serwinski confronted Plaintiff about talking to Wells about Serwinski's behavior. Serwinski indicated to Plaintiff that she was the problem and not him.

47.    On or about February 8, 2005, Plaintiff met with Monaghan concerning Serwinski's behavior. She advised that Serwinski made comments about a "blow up doll" and "Viagra". She also explained that Serwinski kept the shop phone in his pocket so that she would have to ask permission to use it and that Serwinski threw keys at her. She further explained that she had talked to Wells about Serwinski's conduct. Plaintiff then proceeded to show Monaghan the labels in the shop that Serwinski allowed the students to create labels that said "niggers", "bitches" and "Shannon". Additionally, she explained that Wells declined to do anything about Serwinski's conduct.  Monaghan told Plaintiff that he would talk with Wells and get back to her.

48.    On or about February 10, 2005, Plaintiff again talked to Wells about Serwinski's conduct. Later that day, Plaintiff sent Wells an email to advise him that she intended to apply for an instructor position that was open. She also explained that Monaghan was leaving it up to Wells to do something about Serwinski's harassment but nothing was being done.

49.    On or about February 14, 2005, a student (hereinafter C.M.) told Plaintiff that Serwinski wanted to beat up Plaintiff.. Immediately thereafter, Plaintiff contacted both Wells and Monaghan but they were not available.

50.    Plaintiff returned to the classroom and Serwinski and the students were discussing a woman who had spilled coffee on her legs. Serwinski commented that he did not know of any man who would put a cup of hot coffee between his legs and that only a woman would do something so stupid. The students laughed at Serwinski's comments.

51.    That same afternoon, Plaintiff contacted Monaghan at his home to discuss Serwinski's threat to harm Plaintiff, as well as, Serwinski's comment about women being stupid. Monaghan instructed Plaintiff not to return to the shop tomorrow and to go to the main school instead so that they could conduct an investigation.

52.    On the morning of February 15, 2005, Plaintiff spoke with Jim King (hereinafter "King") a vocational specialist. King advised Plaintiff that he had talked to Monaghan concerning an instructor position at the main school and that Monaghan believed that Plaintiff would be the perfect person for the job.

53.    A meeting was held at 11:00 am on or about February 15, 2005 with Plaintiff, Wells and Monaghan. Plaintiff discussed Serwinski's threat to harm her, along with the abovementioned conduct by Serwinski. Monaghan and Wells informed Plaintiff that they would conduct an investigation into Serwinski's conduct and that, during the investigation, Plaintiff would no

longer work in the shop. Plaintiff was instructed that, during the investigation, she would fill in for the instructors and teachers when they were absent, late or in meetings.

54.    On or about February 22, 2005, Plaintiff interviewed for an instructor position at the main school. Wells contacted Plaintiff on or about February 25, 2005 to inform her that she did not get the job and that they had hired someone else.

55.    Immediately prior to Plaintiff's interview she met with DeShazor and explained to him the events involving Serwinski. DeShazor said that he would get back to her because he had to talk with Wells because Wells was her supervisor. However, DeShazor never got back to Plaintiff.

56.    On or about March 3, 2005 and March 7, 2005, Plaintiff asked Wells when the investigation would be completed so that she could return to the shop. Wells advised Plaintiff that they were still conducting the investigation and to "hang in there" and just wait for now.

57.    On or about April 11, 2005, Plaintiff was called to Wells' office to sign papers so that she could be transferred to carpentry.

58.    Plaintiff was never informed by Wells or Monaghan concerning the results of an investigation into Serwinski's conduct.

59.    Plaintiff worked in the carpentry shop for the remainder of the 2004-2005 school year.

60.    On or about June 15, 2005, Plaintiff was informed by Gary Peterson (hereinafter "Peterson"), an employee in the computer technical department, that Plaintiff's contract was not going to be renewed and that he needed to collect her laptop.

61.    On or about June 30, 2005, Plaintiff received a letter from Defendant informing her that her employment contract with Del Castle High School would not be renewed.

62.    The DDOL investigated Plaintiff's charge of discrimination and determined that violations of Title VII had occurred, finding in favor of Plaintiff. A copy of the DDOL's Investigative Memorandum dated April 3, 2006 is attached hereto as Exhibit "A".

63.    The United States Department of Justice issued a Right to Sue Letter to Plaintiff on August 16, 2006. A copy of this Right to Sue Letter, received first by the undersigned attorney on August 21, 2006, is attached hereto as Exhibit "B".

## FIRST CAUSE OF ACTION
### (Gender Discrimination and Sexual Harassment)

64.    Plaintiff re-alleges and incorporates by reference herein paragraphs 1-63.

65.    This cause of action arises under Title VII, 42 U.S.C. § 2000e(2)(a), as amended by the Civil Rights Act of 1991.

66.     Defendant intentionally and maliciously discriminated against Plaintiff on the basis of her

gender (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§2000e(2)(a) when it:

> (a)     knowingly subjected Plaintiff to a hostile work environment on the basis of her
>
> gender, wherein a male co-worker berated and degraded Plaintiff in public;
>
> (b)     knowingly subjected Plaintiff to a hostile work environment on the basis of her
>
> gender, wherein a male co-worker threatened to physically harm Plaintiff; and
>
> (c)     knowingly subjected Plaintiff to a hostile work environment on the basis of her
>
> gender, wherein a male co-worker made sexually explicit remarks about women
>
> in front of Plaintiff and the students.

67.     As a result of Defendant's unlawful gender discrimination, Plaintiff has lost considerable

pay; past, present and future and has also suffered humiliation, mental anguish and emotional

pain.

### SECOND CAUSE OF ACTION
### (Title VII – Retaliation)

68.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1-67.

69.     This cause of action arises under Title VII, 42 U.S.C. § 2000e(2)(a).

70.     Defendant intentionally and maliciously discriminated against Plaintiff in retaliation for

her complaints in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e(2)(a) when it:

> (a)     denied Plaintiff promotions and transfer requests despite her qualifications;
>
> (b)     forced Plaintiff to work in a hostile work environment;

      (c)      permanently removed Plaintiff from her job duties in the aviation

               shop; and

      (d)      ultimately terminated Plaintiff's employment.

71.     Defendant acted with discriminatory motive and the reasons provided by Defendant for failing to promote and/or transfer and to terminate Plaintiff are pretextual.

72.     As a result of Defendant's unlawful retaliation against Plaintiff, she has lost considerable pay; past, present and future and has suffered humiliation, mental anguish and emotional pain.

73.     Defendant's discrimination was willful, wanton and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

74.     The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against the Defendant, New Castle County Vocational Technical School District, and in her favor for damages suffered by Plaintiff as a result of Defendant's actions, including, but not limited to, back pay, front pay, benefits (both retroactively and prospectively), compensatory damages, punitive damages, attorney's fees, the cost of this litigation, pre- and post-judgment interest and such other further relief as this Honorable Court deems just and proper.

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 facsimile
Attorney for Plaintiff Belinda Williams

11/15/06

EXHIBIT A

STATE OF DELAWARE
DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION UNIT



States Case No:05050201W

Ms. Belinda Williams
1304 Cynwyd Club Drive, Apt. #4
Wilmington, DE, 19808
vs.
State of DE/NCC Vo-Teck School
District/Delcastle Technical High School
1417 Newport Road
Wilmington, DE 19804

## FINAL DETERMINATION AND RIGHT TO SUE NOTICE

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

### *Reasonable Cause Determination and Notice of Mandatory Conciliation.*

In this case, the Department has completed its investigation and found that there is reasonable cause to believe that an unlawful employment practice has occurred. Under the provisions of the law, the parties are now required to engage in mandatory conciliation with your investigator. Please be prepared to appear for conciliation on the following date and time __March 22, 2006 at 10:00 a.m.__ at the location of 4425 N. Market Street, Wilmington, DE 19802.

Your cooperation and good faith effort is anticipated. Your corresponding Delaware Right to Sue Notice will be effective one day after your compliance with the conciliation effort.

The reasonable cause finding is based primarily on the following facts:

In this Discrimination case, Charging Party must prove that she was treated less favorably based on sex and retaliated against for opposing a discriminatory practice. Specifically Charging Party must show that based on gender she was sexually harassed and intimidated. She was then transferred in retaliation for complaining of her harassment. The evidence provided in this case established that Charging Party was treated differently than her similarly situated male co-worker based upon sex and was retaliated against. Moreso, as it relates to retaliation evidence proved that after complaining of her treatment little to no investigation was conducted by the Respondent regarding Charging Party's treatment. Subsequently Charging Party was transferred. Respondent offered an explanation but did not provide sufficient evidence to support their position. Therefore, Charging Party has met her burden of proof in this case.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Unit. See the attached Notice of Rights.

__2/28/06__
Date issued

__6/3/06__
Date conciliation completed

Julie K. Cutler, Administrator

Julie K. Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12RC : 10/04

EXHIBIT B



**U.S. Departm   of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5056 2793

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Ms. Belinda Williams
c/o Lori Brewington, Esquire
Law Offices of Margolis& Edelstein
Attorneys at Law
1509 Gilpin Ave.
Wilmington, DE  19806

August 16, 2006    RECEIVED

AUG 2 1 2006

Re:  EEOC Charge Against State of Delaware, Vo-Tech School Dist./Delcastle Tech.
High School
      No. 17C200500356

Dear Ms. Williams:

       Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

       If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

       This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                              Sincerely,

                              Wan J. Kim
                      Assistant Attorney General
                         Civil Rights Division

              by      Karen L. Ferguson

                         Karen L. Ferguson
                   Supervisory Civil Rights Analyst
                   Employment Litigation Section

cc:  Philadelphia District Office, EEOC
     State of Delaware, Vo-Tech School Dist./Delcastle Tech. High Schoo

⑧JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)** Belinda Williams, PLAINTIFF

New Castle County Vocational Technical School District, **DEFENDANTS**

(b)    County of Residence of First Listed Plaintiff- New Castle County

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant- New Castle County

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)    Attorney's (Firm Name, Address, and Telephone Number)
Lori A. Brewington, Esquire
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, DE 19806
302 777-4680

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in Box Only)

| | |
|---|---|
| O 1  U.S. Government Plaintiff | ⊘ 3  Federal Question (U.S. Government Not a Party) |
| O 2  U.S. Government Defendant | O 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business In Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| O 120 Marine | O  Airplane | O  362 Personal Injury - Med. Malpractice | O 620 Other Food & Drug | O 423 Withdrawal 28 USC 157 | O 410 Antitrust |
| O 130 Miller Act | O  Airplane Product Liability | O  365 Personal Injury - Product Liability | O 625 Drug Related Seizure of Property 21 USC 881 | | O 430 Banks and Banking |
| O 140 Negotiable Instrument | O  Assault, Libel & Slander | | O 630 Liquor Laws | **PROPERTY RIGHTS** | O 450 Commerce |
| O 150 Recovery of Overpayment & Enforcement of Judgment | O  Federal Employers' Liability | O  368 Asbestos Personal Injury Product Liability | O 640 R.R. & Truck | O 820 Copyrights | O 460 Deportation |
| O 151 Medicare Act | O 340 Marine | | O 650 Airline Regs. | O 830 Patent | O 470 Racketeer Influenced and Corrupt Organizations |
| O 152 Recovery of Defaulted Student Loans (Excl. Veterans) | O 345 Marine Product Liability | **PERSONAL PROPERTY** O 370 Other Fraud | O 660 Occupational Safety/Health | O 840 Trademark | O 480 Consumer Credit |
| O 153 Recovery of Overpayment of Veteran's Benefits | O  Motor Vehicle | O 371 Truth in Lending | O 690 Other | | O 490 Cable/Sat TV |
| O 160 Stockholders' Suits | O  Motor Vehicle Product Liability | O 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | O 810 Selective Service O 850 Securities/Commodities/ |
| O 190 Other Contract | O  Other Personal Injury | O 385 Property Damage Product Liability | O 710 Fair Labor Standards Act | O 861 HIA (1395ff) O 862 Black Lung (923) | Exchange O 875 Customer Challenge |
| O 195 Contract Product Liability | | | O 720 Labor/Mgmt. Relations | O 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| O 196 Franchise | | | O 730 Labor/Mgmt.Reporting & Disclosure Act | O 864 SSID Title XVI O 865 RSI (405(g)) | O 890 Other Statutory Actions O 891 Agricultural Acts |
| | | | O 740 Railway Labor Act | **FEDERAL TAX SUITS** | O 892 Economic Stabilization Act |
| O 210 Land Condemnation | O 441 Voting | O 510 Motions to Vacate Sentence | O 790 Other Labor Litigation | O 870 Taxes (U.S. Plaintiff or Defendant) | O 893 Environmental Matters |
| O 220 Foreclosure | ⊘ 442 Employment | | O 791 Empl. Ret. Inc. Security Act | O 871 IRS—Third Party | O 894 Energy Allocation Act |
| O 230 Rent Lease & Ejectment | O 443 Housing/ Accommodations | **Habeas Corpus:** | | 26 USC 7609 | O 895 Freedom of Information Act |
| O 240 Torts to Land | | O 530 General | | | O 900Appeal of Fee Determination Under Equal Access |
| O 245 Tort Product Liability | O 444 Welfare | O 535 Death Penalty | | | to Justice |
| O 290 All Other Real Property | O  445 Amer. w/Disabilities - Employment | O 540 Mandamus & Other O 550 Civil Rights | | | O 950 Constitutionality of State Statutes |
| | O  446 Amer. w/Disabilities - Other | O 555 Prison Condition | | | |
| | ⊘ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| ☒ 1 Original Proceeding | O 2 from State Court | O 3 Remanded from Appellate Court | O 4 Reinstated or Reopened | O 5 from district Litigation | O 6 | Appeal to District Judge from Magistrate Judgment O 7 |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 2000e et seq.

Brief description of cause:
Gender Discrimination and Sexual harassment

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P.23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions):    JUDGE

DOCKET NUMBER

DATE  11/15/2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___0 6 - 6 9 5___

## ACKNOWLEDGMENT
## OF  RECEIPT  FOR AO FORM  85

### *NOTICE OF AVAILABILITY OF A*
### *UNITED STATES MAGISTRATE JUDGE*
### *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

NOV 1 5 2006

_____
(Date forms issued)

_mik  w·cf_

_____
(Signature of Party or their Representative)

_Mike   DiEleuterio_

_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action